```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF MISSISSIPPI

 3
    UNITED STATES OF AMERICA,     )
 4                                )
            Plaintiff,            )    CASE NO. 4:16CR074
 5                                )
            vs.                   )
 6                                )
    NATHANIEL BROWN,              )
 7                                )
            Defendant.            )
 8  _____

 9
            CHANGE OF PLEA AS TO COUNT 1 OF THE INDICTMENT
10          BEFORE SENIOR DISTRICT JUDGE NEAL B. BIGGERS
                MONDAY, JANUARY 9, 2017; 2:00 P.M.
11                    OXFORD, MISSISSIPPI

12  FOR THE GOVERNMENT:

13      United States Attorney's Office
        CLAY DABBS, ESQ.
14      900 Jefferson Avenue
        Oxford, Mississippi  38655-3608
15


16  FOR THE DEFENDANT:

17      Sweet & Associates, P.A.
        TERRIS C. HARRIS, ESQ.
18      158 East Pascagoula Street
        Jackson, Mississippi  39201
19


20


21
        Proceedings recorded by mechanical stenography, transcript
22  produced by computer.


23  _____
            RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
24              FEDERAL OFFICIAL COURT REPORTER
               911 JACKSON AVENUE EAST, SUITE 369
25                  OXFORD, MISSISSIPPI  38655
```

1  THE COURT: All right. We've got this matter
2 involving Nathaniel Brown. I see Mr. Dabbs here.
3  MR. DABBS: He's here, Your Honor.
4  THE COURT: Okay. What about his defense attorney?
5  MR. DABBS: They're both here. They're right out
6 here.
7  THE COURT: All right.
8   Are you Mr. Harris?
9  MR. HARRIS: Yes, Your Honor.
10  THE COURT: Will the -- you realize this case was set
11 for ten minutes ago, 15 minutes ago?
12  MR. HARRIS: Yes, Your Honor. I was just outside. I
13 walked over to the clerk's office.
14  THE COURT: Well, the hearing's not at the clerk's
15 office; it's in the courtroom.
16  MR. HARRIS: Yes, Your Honor.
17  THE COURT: Are you ready to proceed with the plea of
18 guilty on your client, Nathaniel Brown?
19  MR. HARRIS: Yes, Your Honor.
20  THE COURT: All right. Let him come up.
21   (PARTIES COMPLYING)
22  THE COURT: All right. Is your name -- full name
23 Nathaniel Brown?
24  THE DEFENDANT: It is.
25  THE COURT: And, Mr. Brown, the Court's advised that

1  you wish to change the plea of not guilty to a plea of guilty.
2  Is that correct?
3           THE DEFENDANT:  That is correct.
4           THE COURT:  All right.  Before accepting your plea,
5  there are a number of questions I'm going to ask you to assure
6  that you understand what you're doing; you know what the
7  consequences of your act are.
8           THE DEFENDANT:  Yes, sir.
9           THE COURT:  If you do not understand any of my
10 questions or you want to consult with your attorney, you may
11 let me know.
12          THE DEFENDANT:  Thank you.
13          THE COURT:  All right.  The clerk will please swear
14 the defendant.
15     (OATH ADMINISTERED BY THE COURTROOM DEPUTY)
16          THE COURT:  All right.  Mr. Brown, you understand
17 you're under oath now, and any answers to these questions are
18 subject to the penalties of perjury if you do not answer them
19 truthfully?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  What is your age?
22          THE DEFENDANT:  Sixty-two.
23          THE COURT:  Okay.  I would give you a little leeway
24 if you didn't say that correctly, but what kind of education do
25 you have?

```
 1            THE DEFENDANT:  I have a medical doctorate.

 2            THE COURT:  A medical doctorate?

 3            THE DEFENDANT:  Yes, sir.

 4            THE COURT:  In other words, you're a medical doctor?

 5            THE DEFENDANT:  That's correct.

 6            THE COURT:  And how long have you -- do you practice

 7  medicine?

 8            THE DEFENDANT:  Yes, sir.  For 38 years.

 9            THE COURT:  Thirty-eight years.  Where is that?

10            THE DEFENDANT:  Cleveland, Bolivar County,

11  Mississippi.

12            THE COURT:  Okay.  And you think you fully understand

13  what is happening here today?

14            THE DEFENDANT:  I do.

15            THE COURT:  Are you presently under the influence of

16  any drugs, medicine, or alcohol in any way that might cloud

17  your thinking?

18            THE DEFENDANT:  No, sir.

19            THE COURT:  Mr. Harris, I assume you've talked to

20  your client today.  Do you have any questions about his mental

21  capacity to enter a knowing plea to this charge?

22            THE DEFENDANT:  No, I do not, Your Honor.

23            THE COURT:  Mr. Dabbs, do you?

24            MR. DABBS:  No, Your Honor.

25            THE COURT:  The Court finds that this defendant is
```

1  competent to enter a plea.  Have you had an ample opportunity,

2  Mr. Brown, to discuss this case with your attorney, Mister --

3           THE DEFENDANT:  I have.

4           THE COURT:  Are you satisfied with your attorney's

5  representation?

6           THE DEFENDANT:  I am.

7           THE COURT:  And do you believe that your attorney has

8  competently represented your best interests in this matter?

9           THE DEFENDANT:  I do.

10          THE COURT:  Do you understand that, under the

11 Constitution and the laws of the United States, that you do not

12 have to plead guilty to this charge; you are entitled to a

13 trial by a jury on these charges; and it's not up to you to

14 prove your innocence; rather, it would be up to the Government

15 to prove you guilty?  Do you understand that?

16          THE DEFENDANT:  I do.

17          THE COURT:  Do you understand that, at a trial, you

18 would be presumed to be innocent of this charge; the Government

19 would be required to prove you guilty beyond a reasonable

20 doubt; and the burden does not shift to you to prove your

21 innocence; rather, the burden's on the Government to prove you

22 guilty?  Do you understand that?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Do you understand, in the course of the

25 trial, if you wish to have one, the witnesses for the

1 Government would have to come into court, testify in your
2 presence; that your attorney could cross-examine those
3 witnesses and attempt to elicit evidence favorable to you; and
4 you, also, could call other persons to testify in your behalf
5 if you wished to do so?
6        THE DEFENDANT: Yes, sir.
7        THE COURT: You also understand if you wished to
8 testify in your own defense you would have that right, of
9 course; but if you chose not to testify, no one could hold that
10 against you; and it would not be considered a liability or
11 suggestion of guilt if you chose not to testify?
12        THE DEFENDANT: Yes, sir, I understand.
13        THE COURT: If you plead guilty here today and I
14 accept your plea, do you understand you're going to waive your
15 right to a trial; there's not going to be one; and there's
16 going to be a judgment of guilty entered against you on the
17 basis of your guilty plea without a trial taking place?
18        THE DEFENDANT: Yes, I do.
19        THE COURT: Having discussed these rights with you,
20 do you still want to plead guilty?
21        THE DEFENDANT: I do.
22        THE COURT: Have you received a copy of this
23 indictment against you?
24        THE DEFENDANT: Yes, I have.
25        THE COURT: Have you discussed, with your attorney,

1  the charges in the indictment and any possible defenses you

2  might have to these charges?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  All right.  Let's look at these charges.

5  You've agreed, as I understand it, to plead guilty to Count 1

6  of the indictment; is that correct?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And it charges you with committing what's

9  commonly known as health care fraud.  In order for you to be

10 found guilty of this charge, if you wished to go to trial, the

11 Government would have three elements, three facts, that it must

12 prove beyond a reasonable doubt.

13       First, that you, and at least one other person, made an

14 agreement to commit the crime of health care fraud as charged

15 in the indictment.  The second element they would have to prove

16 beyond a reasonable doubt is that the defendant knew that this

17 agreement was unlawful.

18       Thirdly, that you joined in this agreement willfully, that

19 is, you knew it was unlawful; and you joined in it willfully

20 with the intent to further its unlawful purpose.  Do you

21 understand that's what the Government would be required to

22 prove in order for you to be found guilty?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Do you know what the maximum possible

25 penalty is on your plea of guilty to this charge?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  What is your understanding of it?

3           THE DEFENDANT:  Not more than 10 years' imprisonment,

4  not more than a $250,000 fine or both; not more than 3 years of

5  supervised release; and $100 special assessment.

6           THE COURT:  All right.  Has anyone threatened you or

7  forced you to plead guilty to this charge?  Anyone threatened

8  you or forced you to plead guilty?

9           THE DEFENDANT:  No, sir.

10          THE COURT:  Has there been a plea agreement entered

11 into, Mr. Dabbs?

12          MR. DABBS:  Yes, Your Honor.

13          THE COURT:  Would you state what that plea agreement

14 is?

15          MR. DABBS:  Yes, Your Honor.  The defendant agrees to

16 plead guilty under oath to Count 1 of the indictment which

17 charges that the defendant, Nathaniel Brown, did knowingly and

18 willfully conspire and agree, with persons known and unknown to

19 the grand jury, to execute a scheme and artifice affecting

20 interstate commerce to defraud a healthcare benefit program,

21 that is, Medicare and Medicaid, and to obtain money and

22 property owned by, and under the custody and control of

23 Medicare and Medicaid, by means of false and fraudulent

24 pretenses, representations, and promises in connection with the

25 delivery of and payment for health care benefits for items and

1  services in violation of Title 18, United States Code, Sections
2  1347 and 1349 with the maximum penalties as were just
3  described.
4       The United States agrees not to charge the defendant with
5  any other offenses arising from, or related to, the above
6  charges.  The defendant understands that the Court may order
7  restitution in accordance with the provisions of Title 18,
8  United States Code, Section 3663 for all offenses committed and
9  specifically agrees that restitution is not limited to the
10 count of conviction.
11      This agreement does not bind any prosecuting authority of
12 any state or any other federal district, nor does it bind the
13 Attorney General of the United States with regard to any
14 matter, criminal or civil, involving federal tax laws.
15      If the defendant violates this agreement, all statements
16 made pursuant hereto will be admissible against the defendant
17 who hereby waives the provisions of Rule 11(f) of the Federal
18 Rules of Criminal Procedure and Rule 410 of the Federal Rules
19 of Evidence.
20      Apart from being advised of the applicability of the U.S.
21 Sentencing Guidelines, and other than as set forth elsewhere in
22 the plea documents, no promise or representation whatsoever has
23 been made to the defendant as to what punishment the Court
24 might impose if it accepts the plea of guilty.
25      The defendant's agreement is knowing, free, and voluntary

1  and not the product of force, threat, or coercion.  The

2  defendant is pleading guilty because the defendant is in fact

3  guilty.  And, Your Honor, there's also a non-binding

4  recommendation on the amount of loss in the plea supplement if

5  you'd like for me to go over that now.

6         THE COURT:  All right.

7         MR. DABBS:  The plea supplement provides that the

8  United States agrees to recommend, pursuant to Rule 11(c)(1)(B)

9  of the Federal Rules of Criminal Procedure, that the loss

10 amount for sentencing guideline purposes is greater than

11 $1,500,000 but less than $3,500,000.

12     And, should the Court not accept this recommendation, the

13 defendant will be bound by the plea agreement and will have no

14 right to withdraw the guilty plea.  Otherwise, there is no

15 agreement as to the sentence to be imposed, which will be in

16 the sole discretion of the Court.

17         THE COURT:  Mr. Brown, you heard the prosecutor state

18 his understanding of the plea agreement that you entered into

19 with the Government.  Is there anything he said about that plea

20 agreement, the substance of it, that you disagree with?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  Has anyone made any prediction or promise

23 or prophesy what sentence you would receive in the case?

24         THE DEFENDANT:  No, sir.

25         THE COURT:  All right.  Mr. Dabbs, what evidence

1  could you present to a jury if called upon to do so?

2            MR. DABBS:  At trial, the Government would offer the

3  testimony of law enforcement officers and lay witnesses, would

4  present both physical and documentary evidence, to prove that

5  Nathaniel Brown conspired with Sandra Livingston, Lara

6  Thompson, and others, known and unknown to the grand jury, to

7  commit healthcare fraud in violation of Title 18, United States

8  Code, Sections 1347 and 1349.

9       Specifically, the Government would show that the Centers

10  for Medicare & Medicaid Services, a federal agency within the

11  United States Department of Health and Human Services, was a

12  department of the United States government with

13  responsibilities under federal law for the funding,

14  administration, and supervision of certain health care

15  programs, including the Medicare program; and that Medicare was

16  a health care benefit program as defined in Title 18, United

17  States Code, Section 24(b).

18       If certain requirements were met, Medicare "Part A"

19  hospital insurance covered hospice care.  To qualify for

20  hospice care, a Medicare patient must be certified by a

21  physician as terminally ill with a life expectancy of six

22  months or less if the terminal condition runs its normal

23  course.  At the end of a 90-day enrollment period, a physician

24  may recertify a patient for hospice care if the patient

25  remained terminally ill.

1       Sandra Livingston owned and operated Sandanna Hospice and
2  Milestone Hospice. Both Sandanna and Milestone applied for,
3  and received, a Medicare provider number to purportedly provide
4  hospice services in the Northern District of Mississippi.
5  Sandanna Hospice applied for and received a Medicaid provider
6  number.
7       Nathaniel Brown, the defendant, was a medical doctor and
8  served as the medical director for both Milestone Hospice and
9  Sandanna Hospice. As medical director, Dr. Brown certified
10 patients as terminally ill and referred patients to both
11 Sandanna Hospice and Milestone Hospice.
12      Lara Lynn Thompson was employed by Sandra Livingston at
13 both Sandanna Hospice and Milestone Hospice. Ms. Thompson
14 assisted Sandra Livingston in using patient recruiters to
15 collect names and identifying information and to solicit
16 patients for Sandanna Hospice and Milestone Hospice that were
17 not hospice appropriate. These patient recruiters often
18 transported the patients directly to Dr. Brown at an office
19 building in Cleveland, Mississippi.
20      From on or about November 2011 through on or about
21 July 2014, Sandra Livingston, through Sandanna Hospice and
22 Milestone Hospice, submitted claims for reimbursement to
23 Medicare for hospice services related to patients referred to
24 Sandanna Hospice and Milestone Hospice by Dr. Brown.
25      The claims submitted for patients that were certified as

1 terminally ill and referred by Dr. Brown resulted in the
2 payment of approximately $1,941,254 in Medicare funds to
3 Sandanna Hospice and Milestone Hospice.
4     Dr. Brown certified numerous patients as terminally ill
5 and qualified for hospice, when, in truth and in fact, the
6 patients were not terminally ill and did not qualify for
7 hospice care. At the time he certified the patients, Dr. Brown
8 knew that Sandra Livingston would submit fraudulent claims to
9 Medicare and Medicaid and receive payments from Medicare and
10 Medicaid based on his false certifications and referrals.
11     For example, Dr. Brown falsely certified patient B.H. as
12 terminally ill and hospice appropriate when, in truth and in
13 fact, patient B.H. was not terminally ill and was not hospice
14 appropriate.
15     Sandra Livingston, through Milestone Hospice, submitted
16 fraudulent claims to Medicare and received payment in the
17 amount of $41,545.00 for patient B.H. over the time period of
18 October 22nd, 2012 through September 3rd of 2013.
19     From on or about November 2011 to on or about
20 January 2014, Sandra Livingston, through Sandanna Hospice and
21 Milestone Hospice, paid Dr. Brown approximately $47,750 in
22 checks plus additional payments in cash.
23     And the Government would ask the Court to take judicial
24 notice that Bolivar County is located in the Northern Judicial
25 District of Mississippi.

1      THE COURT:  All right.
2      Mr. Brown, you heard the prosecutor state what evidence he
3 could present to prove this charge.  Did you do what he just
4 claimed you did?
5      THE DEFENDANT:  Yes, sir.
6      THE COURT:  All right.  The Court finds there is a
7 factual basis for you to plead guilty to this charge.  Do you
8 plead guilty or not guilty to Count 1 of this indictment?
9      THE DEFENDANT:  I'm sorry.  I didn't understand.
10      THE COURT:  Do you plead guilty or not guilty to
11 Count 1 of this indictment?
12      THE DEFENDANT:  I plead guilty.
13      THE COURT:  All right.  Then, since the Court finds
14 you're voluntarily pleading guilty, you know what your right is
15 to a trial, you know what the maximum possible punishment is,
16 and then the Court's finding there is sufficient evidence to
17 prove you guilty if called upon to do so, the Court will accept
18 your plea and enter a judgment of guilty on your plea.
19      All right.  The next matter, of course, will be to
20 determine the sentence you will receive in this case.  There
21 will be a Presentence Report compiled to give the Court some
22 additional information on what would be a proper sentence in
23 your case.
24      The presentence investigating officers will come to you.
25 You'll have some input in it, if you'd like.  And they'll

1  present it to the Court, and we'll sentence -- set your
2  sentencing date for May 23rd of this year.  You're allowed to
3  be out on bond until that time.  And you and your attorney
4  should be back on that date.
5           THE DEFENDANT:  Yes, sir.
6           THE COURT:  Is there anything else, Mr. Dabbs?
7           MR. DABBS:  Your Honor, at this time, the Government
8  would file the original plea agreement and the plea supplement.
9           THE COURT:  Very well.
10          MR. HARRIS:  Your Honor, is there a time for the 23rd
11 yet?
12          THE COURT:  Well, we don't know yet; but we'll notify
13 you.
14          MR. HARRIS:  Yes, sir.
15          THE COURT:  All right.  You're in Jackson, now; is
16 that right?
17          MR. HARRIS:  Yes, Your Honor.
18          THE COURT:  All right.  We'll let you know of the
19 time on that date.  If there's any change, you'll also be
20 advised of it.
21          MR. HARRIS:  Thank you, Your Honor.
22          THE COURT:  Thank you.  You gentlemen may be excused.
23          MR. DABBS:  Thank you, Your Honor.
24          THE COURT:  If there's nothing further, we'll be in
25 recess.

1        **(THE HEARING ENDED AT 2:21 p.m.)**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, Rita Davis Young, Federal Official Realtime

 5   Court Reporter, in and for the United States District Court for

 6   the Northern District of Mississippi, do hereby certify that

 7   pursuant to Section 753, Title 28, United States Code that the

 8   foregoing is a true and correct transcript of the

 9   stenographically reported proceedings held in the

10   above-entitled matter; and that the transcript page format is

11   in conformance with the regulations of the Judicial Conference

12   of the United States.

13

14

15                     Dated this 2nd day of May, 2017.

16

17

18

19                     /s/ Rita Davis Young
                       RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20                     Federal Official Court Reporter

21

22

23

24

25
```